IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TALON NORCO, a minor, by RICKY NORCO and WENDY NORCO, Guardians *Ad Litem,* and RICKY NORCO and WENDY NORCO, in their own right, | ) ) ) ) ) | Civil Action No. 2:11-cv-1453 |
| Plaintiffs, | ) ) | Chief Judge Gary L. Lancaster Chief Magistrate Judge Lisa Pupo Lenihan |
| v. | ) ) | ECF No. 5 |
| ALLSTATE INSURANCE CO. and STEPHANIE CUNNINGHAM, | ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

## I.     RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss Plaintiffs' Amended

Complaint (ECF No. 1-7) pursuant to Rule 12(b)(6) be granted in part and denied in part, as set

forth below.

## II.     REPORT

This diversity action, which was removed to this Court from Lawrence County Court of

Common Pleas on November 14, 2011, involves a dispute over insurance coverage under an auto

policy provided by Defendant Allstate Insurance Company ("Allstate").  Plaintiffs' Amended

Complaint asserts nine causes of action, which include: (1) a negligence claim against Jessica

Norco, the driver of the insured vehicle (Count I); (2) a demand for payment of policy limits of

all applicable coverage (Count II); (3) a common law bad faith claim (Count III); (4) a statutory

bad faith claim under 42 PA. CONS. STAT. ANN. §8371 (Count IV); (5) a claim against Allstate

under the Pennsylvania Uniform Trade Practices and Consumer Protection Law ("UTPCPL")

(Count V); (6) a claim for wrongful use of civil proceedings (Count VI); (7) a common law fraud

claim (Count VII); (8) a claim for deceit/intentional misrepresentation claim against Defendant

Cunningham (Count VIII); and (9) a UTPCPL claim against Defendant Cunningham (Count IX).

Defendants have moved to dismiss the entire complaint with prejudice.  For the reasons set forth

below, the Court recommends that Defendants' motion be granted in part and denied in part.

A.    <u>Relevant Facts</u>

For purposes of the motion to dismiss, the Court must accept all well-pleaded facts in the

Amended Complaint as true.  On August 18, 2007, Defendant Jessica Norco was driving a

vehicle insured by Allstate under Allstate Auto Policy No. 0 01 106372 12/13 ("Policy"), when

she lost control of the vehicle and struck a tree, causing the vehicle to travel over an embankment

and come to rest on the driver's side. (Am. Compl. ¶¶6-7, 9, 11. The minor Plaintiff, Talon

Norco ("Talon"), the son of Defendant Jessica Norco, was a passenger in said vehicle and

sustained serious injuries in the accident.  (*Id.* at ¶¶ 8, 13.)  At the time of the accident, Talon

was fifteen months old. (*Id.* at ¶8.)  Neither Ricky Norco nor Wendy Norco was a passenger in

the vehicle driven by Jessica Norco at the time of the accident.

The Auto Policy Declarations page, attached to Defendants' motion to dismiss, indicates

that the named insured under the Policy is Plaintiff Wendy Welsh.[1]  (Ex. A to Defs.' Mot. to

Dismiss at 3, ECF No. 6-1 at 3.)  The Auto Policy Declarations page further provides that the

covered drivers are "Wendy and Jessica." (*Id.*)  The Allstate Policy provides first party medical

benefits up to the limit of $5,000.00 per person and liability coverage for bodily injury up to the

amount of $50,000.00 per person.  (*Id.*, Ex. A at 5, ECF No. 6-1 at 4.)  The Auto Policy

Declarations page further indicates that the named insured selected the limited tort option.  (*Id.*)

---

[1] Wendy Welsh is Wendy Norco's maiden name.

Following the accident, Plaintiffs Wendy and Ricky Norco, as guardians *ad litem* for Talon (the "Guardian Plaintiffs"), sought on Talon's behalf to obtain the Policy limits for first party medical benefits and liability coverage under the Policy, as the losses and damage suffered by Talon as a result of the accident exceeded the policy limits. (Am. Compl. ¶¶19, 31.) The Guardian Plaintiffs contend that after notifying Allstate of Talon's injuries, Defendants engaged in a course of conduct designed to delay the payment of monies which were properly due and owing to Talon, and attempted to negotiate a settlement of Talon's claim for a sum far below its true value and far below the limits of the Policy. (Am. Compl. ¶23.) Guardian Plaintiffs further allege that from the time of the accident until August 9, 2011, Allstate attempted to obtain their agreement to a settlement which did not fairly represent the interests of Talon and did not adequately compensate Talon for his losses and damages. (*Id.* at ¶25.) Allstate, through its representatives, is alleged to have falsely advised the Guardian Plaintiffs that because they had elected the limited tort option, Allstate was not obligated to pay anything, and if they refused Allstate's "generous" offer, they would receive nothing. (*Id.* at ¶26.) Guardian Plaintiffs also contend that Allstate discouraged them from obtaining legal counsel. (*Id.* at ¶27.)

On August 9, 2011, with the Guardian Plaintiffs in attendance, Allstate presented to the Orphans Court in the Court of Common Pleas of Lawrence County a Petition to Approve Settlement of a Minor's Claim filed at No. 64 of 2011, Orphans Court (the "Settlement Petition"). The Settlement Petition, prepared by Allstate's legal counsel, sought to compromise and settle Talon's claims for the following amounts: (1) The payment of $5,501.86 to the Pennsylvania Department of Public Welfare purportedly for a lien claimed by DPW as of 11/3/08; and (2) the purchase of an annuity from Allstate Life Insurance Company which was structured to pay (a) $2,000.00 when Talon attained the age of 18, (b) $3,000.00 when Talon

reached the age of 21, and (c) $6,000.00 when he turned 25 years of age. (*Id.* at ¶¶28-29, 32.) Guardian Plaintiffs believe that the present value of the annuity is $5,000.00. (Am. Compl. ¶34.) Although Allstate had obtained the signatures of Guardian Plaintiff Wendy Norco and Defendant Jessica Norco upon a settlement agreement and release for the amounts described above, Judge Hodge refused to approve the settlement agreement when it was presented on August 9, 2011, and advised the Guardian Plaintiffs to have the proposed settlement agreement and release reviewed by independent legal counsel. (Am. Compl. ¶¶33, 36-37.)

Subsequently, independent legal counsel reviewed the proposed settlement and rejected it. (*Id.* at ¶38.) Based upon advice of counsel, the Guardian Plaintiffs filed answers and objections to the Settlement Petition. (*Id.* at ¶58.) On August 30, 2011, Judge Hodge entered an order denying the Settlement Petition, and no appeal was taken from this order. (*Id.* at ¶¶59-60.)

Shortly after retaining their own counsel, Plaintiffs instituted the present action against Defendants in the Court of Common Pleas of Lawrence County, at No. 11036 of 2011, C.A., on August 11, 2011. (Defs. Ex. A attached to Notice of Removal, ECF No. 1-2.) On that same date, Ricky and Wendy Norco were appointed guardians *ad litem* for Talon. (Defs. Ex. B attached to Notice of Removal, ECF No. 1-3.) On October 28, 2011, the court of common pleas granted Plaintiffs' petition to file an amended complaint to add Stephanie Cunningham as a party Defendant and Plaintiffs filed their Amended Complaint. (Defs. Exs. E & F attached to Notice of Removal, ECF Nos. 1-6 and 1-7.) Shortly thereafter, the parties reached a settlement as to the claims against Defendant Jessica Norco only (Count I) which was approved by the court of common pleas on November 7, 2011. (Defs. Ex. H attached to Notice of Removal, ECF No. 1-9.) On that same date, Plaintiffs filed a praecipe to settle and discontinue the matter against Jessico Norco only. (Defs. Ex. I attached to Notice of Removal, ECF No. 1-10.)

With Jessico Norco out of the case, Defendants filed a Notice of Removal on November 14, 2011 predicated upon diversity jurisdiction, thereby removing the present action to the United States District Court for the Western District of Pennsylvania. (Notice of Removal, ECF No. 1.) On November 21, 2011, Defendants filed a motion to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion has been fully briefed and responded to by the parties, and thus is ripe for disposition.

### B.     <u>Legal Standard – Motion to Dismiss</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57). The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler,* 578 F.3d at 210-11. Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id.* (citing *Phillips* at 234-35).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id.* A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

In the case at bar, Defendants have attached a number of documents to their motion to dismiss that do not fit into any of the categories delineated above. In particular, the emails, letters, and Medical Bill – Loss History (Defs. Exs. E, H at 1-3, ECF No. 6-5, 6-8 at 1-3) are neither public records nor are they referred to in, or attached to, the Amended Complaint. In response to the motion to dismiss, Plaintiffs have also attached a number of emails which are

neither public records nor referred to in, or attached to, the Amended Complaint. For purposes of deciding the motion to dismiss as to Count II only, the Court will treat Defendants' motion as one for summary judgment, as both sides have submitted documents in support of their positions. On the other hand, the Auto Policy documents (Defs. Exs. A, B, C, & H at 4-12, ECF Nos. 6-1, 6-2, 6-3, 6-8 at 4-12) are referred to in the Amended Complaint, and the court orders from the court of common pleas (Defs. Exs. F, G, ECF Nos. 6-6, 6-7) are public records, and thus may be considered without converting the motion to dismiss to one for summary judgment.

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

More specifically, the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting FED.R.CIV.P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

C.   **Discussion**

Defendants have moved to dismiss the remaining counts of Plaintiffs' Amended Complaint, which include:  (1) a claim against Allstate seeking coverage up to limits of the Policy (Count II); (2) a common law bad faith claim against Allstate (Count III); (3) a statutory bad faith claim (Count IV); (4) a claim against Allstate under the UTPCPL (Count V); (5) a claim for wrongful use of civil proceedings (Count VI); (6) a common law fraud claim (Count VII); (7) a common law fraud (deceit) claim against Stephanie Cunningham (Count VIII); and (8) a claim against Cunningham under the UTPCPL (Count IX).  The Court will address the arguments for dismissing each of these claims in turn.

1.   **Coverage Claim**

Allstate has submitted  evidence to show that it paid the full policy limits of first party medical benefits.  Although the allegations of the Amended Complaint indicate that the amount that Allstate paid for first party medical benefits is disputed, the emails attached by Plaintiffs to their brief in opposition to the motion to dismiss, as well as the exhibits attached to Defendants' brief in support of dismissal, indicate that at least with respect to the first party medical benefits, Allstate has provided uncontradicted proof that it paid first party medical benefits equal to the Policy limits of $5,000.00.  Plaintiffs fail to cite to any evidence that raises a question of fact as to whether these benefits were paid.  Accordingly, the Court finds that no reasonable jury could find that Allstate did not pay the Policy limits for first party medical benefits for Talon's medical bills.  Therefore, the Court recommends that Defendants' motion to dismiss, treated as a motion for summary judgment, be granted as to the coverage claim in Count II.

2.   **Common Law Bad Faith Claim**

Defendants seek dismissal of Plaintiffs' common law bad faith claim in Count III, relying

on Pennsylvania Supreme Court precedent to the effect that generally there is no cause of action for common law bad faith based in tort available to insureds in Pennsylvania, citing in support *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 431 A.2d 966 (Pa. 1981), and *Ash v. Continental Insurance Co.,* 932 A.2d 877, 884 (Pa. 2007). Defendants further contend that Plaintiffs' attempt to artfully plead their common law bad faith claim to create a recoverable cause of action under *Dercoli v. National Mutual Casualty Insurance Co.,* 554 A.2d 906 (Pa. 1989), fails as a matter of law and fact.

In response, Plaintiffs counter that the Pennsylvania Supreme Court in *Dercoli* recognized a cause of action for common law bad faith in the situation where an insurer undertakes to act as a legal advisor to its insured so as to give rise to a fiduciary-like relationship with the insured. Plaintiffs submit that this is exactly what happened here.

Although Defendants are correct that under Pennsylvania law an insured cannot assert a common law *tort-based* claim for bad faith against an insurer, Plaintiffs do not appear to be asserting a tort-based bad faith claim in the instant matter.[2] Rather, Plaintiffs are asserting that Allstate breached a duty of fair dealing owed to its insureds under the Policy.[3] Such a duty was recognized by the Pennsylvania Supreme Court in *Dercoli* in limited situations. In that case, the plaintiff was severely injured in a vehicular accident as a passenger in a car driven by her husband, the insured. The plaintiff asserted that upon the advice and assurances of the insurers—that she would receive everything to which she was entitled under the policies—she was induced to refrain from hiring counsel to represent her. Approximately one year after the accident and while plaintiff was receiving benefit checks from the insurers and relying on the

---

[2] However, to the extent the allegations in Plaintiffs' common law bad faith claim can be construed as a tort-based claim for bad faith, it is barred by *D'Ambrosio* and *Ash*.

[3] Such a cause of action is contract-based, not tort-based. *See Ash,* 932 A.2d at 884; *Lombardo v. State Farm Mut. Ins. Co.,* 800 F.Supp. 208, 213 (E.D.Pa. 1992)(citing *Dercoli*, 554 A .2d at 909).

insurers' agents advice, the Pennsylvania Supreme Court abolished interspousal immunity, thus providing plaintiff with a viable tort claim for negligence against her late husband's estate, which unequivocally fell within the policies' liability coverage. Nonetheless, the insurers' agents failed to advise the plaintiff of the potential tort claim or of the fact that the claim was clearly covered by the policies. Plaintiff did not discover the change in the law until almost four years later, well after the statute of limitations had expired. Subsequently, the plaintiff brought a civil action against the insurers for, inter alia, damages resulting from a breach of their duty of fair dealing and good faith. 554 A.2d at 907.

The Pennsylvania Supreme Court in *Dercoli* ultimately concluded that "[c]onsistent with the obligation of fair dealing and good faith the [insurers] had a duty to inform [plaintiff] of their conflict of interest, and of her apparent right to damages against her deceased husband's estate[,]" and that their failure to do so, after assuring plaintiff that she need not hire an independent attorney and that she would receive all of the benefits to which she was entitled under the policies, constituted a breach of the duty of fair dealing and good faith. *Id.* at 909. In reaching this conclusion, the supreme court emphasized:

> The [insurers]' agents in this case voluntarily undertook to provide assistance and advice to [plaintiff] and in the process advised her against retaining independent legal counsel. The [insurers] were bound to deal with the [plaintiff] on a fair and frank basis, and at all times, to act in good faith. The duty of an insurance company to deal with the insured fairly and in good faith includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim. This is especially true where the insurer undertakes to advise and counsel the insured in the insured's claim for benefits. Under such circumstances, the insurer has a duty to inform the insured of all benefits and coverage that may be available and of any potential adverse interest pertaining to the insurer's liability under the applicable policy.

*Id.* (internal citations omitted). Hence, by voluntarily transforming themselves into legal advisors to the plaintiff, the *Dercoli* court held the insurers assumed a fiduciary duty to provide the plaintiff with all available benefits, which duty necessarily involved taking action in accordance with all changes in the law. *Id.* at 911 (Papadakos, J., concurring).

The holding in *Dercoli* has been narrowly construed and thus limited to situations where the insurer has knowingly and purposefully misrepresented coverage available under the policy, and has voluntarily transformed itself into a legal advisor to the insured. *Miller v. Keystone Ins. Co.,* 636 A.2d 1109, 1112-13 (Pa. 1994) (citing *Dercoli*, 554 A.2d at 911 (Papadakos, J., concurring)). In *Miller,* Justice Zappala, writing for the majority, emphasized that the "insurer's knowing and purposeful misrepresentation was critical to this Court's determination [in *Dercoli*] that the insurers were bound to disclose all of the benefits to which the claimant was entitled." *Id.* at 1112. He distinguished *Miller* from *Dercoli* by observing that in *Miller,* the record was devoid of any evidence showing that the insurer voluntarily undertook to act as the insured's counsel, *id.* at 1112, or that the insurer lulled the insured into inaction with regard to a viable claim, *id.* at 1114.

So too is *Dercoli* distinguishable from the case at bar. Although Plaintiffs allege they were discouraged from retaining independent legal counsel, and Defendants allegedly went so far as to draft a settlement agreement, obtain the Guardian Plaintiffs' signatures on the agreement, and present it to the state court judge for approval, Plaintiffs nonetheless rejected the settlement agreement and retained independent legal counsel, after the state court judge refused to approve the settlement and advised Plaintiffs to retain independent legal counsel. Thus, any fiduciary duty Defendants may have assumed under *Dercoli* to advise Plaintiffs about coverage under the Policy ended when Plaintiff retained independent legal counsel. Plaintiffs do not

appear to have suffered any cognizable harm from Defendants' conduct prior to retention of counsel—they rejected the settlement and they did not lose or waive any rights or claims under the Policy or applicable law. However, Plaintiffs should be allowed an opportunity to file a Motion for Leave to Amend their complaint if they are able to plead what harm resulted from Defendants' conduct prior to retention of counsel. Thus, the Court recommends dismissal of the common law bad faith claim without prejudice.

### 3. Statutory Bad Faith Claim

Defendants also seek dismissal of Plaintiffs' statutory bad faith claim in Count IV, arguing in support that the Minor Plaintiff, Talon, as a third party claimant, and Plaintiffs Ricky and Wendy Norco in their own right, lack legal standing to pursue such a claim. Defendants submit that Pennsylvania jurisprudence is clear that "'bad faith liability under § 8371 is limited to claims for first-party benefits, *i.e.,* benefits payable to the named insured as a consequence of his or her status as a named insured.'" Defs.' Br. in Supp. Mot. to Dismiss at 9, ECF No. 6 (quoting *Gramberg v. Nationwide Mut. Ins. Co.,* No. 3:CV-98-0258, 2000 U.S. Dist. LEXIS 20108, at *9 (M.D.Pa. Feb. 24, 2000)). According to Defendants, Plaintiffs' statutory bad faith claim arises solely out of Allstate's alleged conduct in handling Talon's third party liability claim for bodily injury. As such, Defendants maintain that Talon lacks standing as a matter of law to bring a statutory bad faith claim. Similarly, Defendants argue that Ricky and Wendy Norco do not have legal standing to bring a statutory bad faith claim as it is undisputed that neither of them were involved with the motor vehicle accident or were even present in the vehicle at the time of the accident, sustained any injuries, or presented a claim on their own behalf as a result of the accident. Therefore, as a matter of law, Defendants submit that Ricky and Wendy Norco lack legal standing to bring a statutory bad faith claim. In response, Plaintiffs counter that Defendants

have misstated the law in Pennsylvania on this issue and cite to several cases which they contend support their position that there is no distinction between first party and third party claimants in a bad faith context.

In Pennsylvania, claims for statutory bad faith under Section 8371 are limited to actions arising under an insurance policy:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. ANN. §8371. In construing the phrase, "an action arising under an insurance policy" in Section 8371, the Pennsylvania Superior Court has concluded that this language means "'that the insured's cause of action must originate from a writing setting forth an agreement between the insured and insurer that the insurer would pay the insured upon the happening of certain circumstances.'" *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 416 (Pa. Super. Ct. 2004) (en banc) (quoting *Ridgeway v. United States Life Credit Life Ins. Co.*, 793 A.2d 972, 976 (Pa. Super. Ct. 2002)). In other words, "the term 'bad faith' concern[s] the duty of good faith and fair dealing in the parties' contract and the manner by which an insurer discharge[s] its obligations of defense and indemnification in the third-party claim context or its obligation to pay for a loss in the first party claim context." *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 199 (Pa. 2007) (citations omitted).

Thus, bad faith conduct under Section 8371 has been broadly construed to include any

bad faith conduct that occurs in an action arising under an insurance policy. *Hollock v. Erie Ins. Exch.,* 842 A.2d 409, 415 (Pa. Super. Ct. 2004) (en banc) (citing *O'Donnell ex rel. Mitro v. Allstate Insurance Co.,* 734 A.2d 901, 906 (Pa. Super. Ct. 1999) (opining that the "'broad language of section 8371 was designed to remedy all instances of bad faith conduct by an insurer, whether occurring before, during or after litigation[,]'" and acknowledging that "'[a]n action for bad faith may also extend to the insurer's investigative practices[.]'") For example, the Pennsylvania courts have extended the bad faith statute to claims involving an unreasonable denial of benefits, or an insurer's inadequate investigative practices, *see O'Donnell,* 734 A.2d at 906; a failure to communicate with the claimant, and the mishandling of UIM claims, *see Condio v. Erie Ins. Exch.,* 899 A.2d 1136, 1142-43, 1145 (Pa. Super. Ct. 2006) (citations omitted); and the refusal to settle a claim that could have been settled within the limits of the policy "without 'a bona fide belief . . . that it has a good possibility of winning,'" *see Birth Center v. St. Paul Cos., Inc.,* 787 A.2d 376, 378 (Pa. 2001). In the context of a third party negligence claim brought against an insured, a statutory bad faith claim arises from the insurance company's duty to defend and/or indemnify its insured. *Toy,* 928 A.2d at 199; *Gramberg,* 2000 U.S. Dist. LEXIS 20108, at *9-*10.

Although the scope of bad faith conduct which is actionable under Section 8371 has been construed broadly, it is not without limits. In Pennsylvania, a statutory bad faith claim will not lie if the party bringing the bad faith claim is not an "insured" under the policy. *Badet v. State Farm Mut. Auto. Ins. Co.,* Civ. A. No. 96-3938, 1998 U.S. Dist. LEXIS 1967, at *5 (E.D.Pa. Feb. 24, 1998) ("To sustain a claim for 'bad faith' against an insurer, a plaintiff must be an 'insured' as that term is defined in the insurance policy.") (citations omitted). As the Pennsylvania Superior Court held in *Strutz v. State Farm Mutual Insurance Co.*: "[T]he duty to negotiate a

settlement in good faith arises from the insurance policy and is owed to the insured, not to a third-party claimant. By asserting its policy right to handle all claims, the insurer assumes a fiduciary position toward the insured and becomes liable to act in good faith and with due care in representing the interests of the insured." 609 A.2d 569, 571 (Pa. Super. Ct.. 1992) (citation omitted).

Similarly, our sister court in the Eastern District of Pennsylvania held in *Seasor v. Liberty Mutual Insurance Co.* that passengers in the insured vehicle, who brought a negligence action against the driver, could not bring statutory bad faith claims against the insurer based on that claim because they were not "insureds" as defined in the insurance policy. 941 F.Supp. 488, 492 (E.D.Pa. 1996), *aff'd mem.,* 116 F.3d 469 (3d Cir. 1997). In so holding, the district court relied on the superior court's decision in *Strutz, supra.* 941 F.Supp. at 491. Under the terms of the insurance policy in *Seasor,* although the passengers qualified as "insureds" for first party benefits, the court found they did not meet the definition of "insureds" for liability coverage. *Id.* at 492. This finding was fatal to their statutory bad faith claim.

In opposing dismissal of their statutory bad faith claim, Plaintiffs rely on language in *Condio* that states, "Pennsylvania law holds insurers to a duty of good faith and fair dealing towards their insureds . . . without distinguishing between first party and third party settings." 899 A.2d at 1144 (internal citations omitted). However, Plaintiffs' reliance on *Condio* is misplaced. Plaintiffs focus their attention on the reference to "third party settings" while ignoring the first part of that statement, which clearly indicates that the insurer's duty in either context is owed to its insured. Thus, if the party claiming bad faith is not an insured, there is no duty on the part of the insurer to that party, and thus, no viable claim for statutory bad faith. *Badet,* 1998 U.S. Dist. LEXIS 1967, at *5; *Strutz,* 609 A.2d at 571. Additionally, Plaintiffs

ignore the supreme court's ruling in *Toy* that in the context of a third party negligence claim brought against an insured, a statutory bad faith claim arises from the insurance company's duty to defend and/or indemnify its insured. *Toy,* 928 A.2d at 199. Here Talon's bad faith claim is not and cannot be predicated upon Allstate's duty to defend and/or indemnify.[4]

Even if the party bringing the statutory bad faith claim qualifies as an insured under the insurance policy, he must still show that the action in which he is claiming bad faith is one that arose under an insurance policy. The district court in *Gramberg* considered this very issue in the context of a third party negligence claim. In that case, the third party claimant was the named insured under the policy who sustained injuries in a vehicular accident while riding as a passenger in her insured vehicle. The issue of whether the plaintiff could bring a statutory bad faith claim against her insurer did not turn on whether she was an "insured" under the policy, but instead, focused on whether her bad faith claim was based on an action arising under an insurance policy. In concluding that the third party claim did not fall into this category, the court reasoned that:

> A third-party's tort claim does not arise under an insurance policy; it arises under common law. It is the tortfeasor to whom the insurer owes a contractual duty to defend and to indemnify against any judgment. The claimant generally has no right to make a claim directly against the insurer, and the insurer's liability is that of an

---

[4] The other cases relied upon by Plaintiffs are also distinguishable. *Dercoli* is inapposite to Plaintiffs' statutory bad faith claim as the Pennsylvania Supreme Court issued its decision in that case prior to the enactment of Section 8371. *See Gramberg,* 2000 U.S. Dist. LEXIS 20108, at *15 (*Dercoli* did "not address the question of whether a third-party claimant who also happens to be an insured can maintain a bad faith action under §8371 for the insurer's handling of the third-party claim."). Unlike the case at bar, *Birth Center* involved the issue of whether §8371 prohibited an award of compensatory damages which was otherwise available on a claim for breach of contract also pled against the defendant insurer. Similarly, *Zenith Insurance Co. v. Wells Fargo Insurance Services of Pennsylvania,* Civ. A. No. 10-5433, 2011 WL 6210686 (E.D.Pa. Dec. 13, 2011), does not support Plaintiff's position, but merely stands for the proposition that Section 8371 does not limit bad faith claims to those involving a denial of benefits. In *Zenith,* the insureds asserted a statutory bad faith claim against their insurer in a counterclaim, alleging that the insurer filed the complaint against them to embroil them in extensive and expensive litigation in order to deprive them of the benefit of coverage by coercing them to contribute to a settlement. *Id.* at *4. There are no such allegations in the case at bar.

indemnitor. By limiting the bad faith cause of action to claims "arising under an insurance policy," the General Assembly plainly restricted the class of claimants to those persons who had a contractual right to benefits from the insurer with respect to the particular claim presented. Gramberg, in her capacity as a tort claimant, does not fall within this class of persons who may maintain an action under § 8371.

2000 U.S. Dist. LEXIS 20108, at *9-*10. The court went on to hold:

> Only those who are entitled to make a claim directly against the insurance company for benefits payable by virtue of their status as "insureds" have a right to invoke § 8371. The fact that the claimant has a right to make a claim for some other benefits under the policy does not accord that person the right to maintain a bad faith claim in connection with the insurance company's handling of the tort claim for which the insurer owes no contractual duty to the claimant.

*Id.* at *11-*12. This Court finds the *Gramberg* court's reasoning persuasive and will follow it here. Although Talon may be an "insured" under the Policy for first party benefits as a passenger in the insured vehicle, as a third party claimant, his statutory bad faith claim, which is based on the handling of his negligence claim, does not arise from any duty owed under an insurance policy, as required by Section 8371. Merely because Talon may have a right to claim first party medical benefits under the Policy does not accord him the right to maintain a statutory bad faith claim in connection with Allstate's handling of his tort claim against Jessica Norco. Allstate's contractual duty is to the tortfeasor, Jessica Norco, not Talon. Accordingly, the Court recommends that Talon's statutory bad faith claim in Count IV be dismissed with prejudice.

With regard to Plaintiffs Ricky and Wendy Norco, it appears that there is a writing between Wendy Norco and Allstate, based on the declarations page showing Wendy as the "named insured" under the Policy. However, no writing has been provided showing an

insurance contract between Ricky Norco and Allstate.[5]  Nonetheless, the Court finds that neither Wendy nor Ricky have standing in their own right to bring a statutory bad faith claim.  Although it appears from the declarations page that Wendy is a named insured under the Policy, the basis for the statutory bad faith claim is Defendants' conduct in handling, investigating, and offering to settle for less than the Policy limits, Talon's third party negligence claim against Jessica Norco.  The Complaint does not allege that Wendy or Ricky (1) were passengers in the car driven by Jessica Norco at the time of the accident, (2) suffered any injury in the accident, (3) made any insurance claim on their own behalf in connection with the accident, or (4) suffered any injury as a result of Defendants' handling of Talon's negligence claim.  A bedrock of the law of standing is that the party bringing suit must have been adversely affected by the matter he or she seeks to challenge in order to have standing to obtain judicial relief.  *Anderson v. Nationwide Ins. Enter.*, 187 F.Supp. 2d 447, 454-55 (W.D.Pa. 2002) (citing *Treski v. Kemper Nat'l Ins. Cos.,* 674 A.2d 1106, 1111 (Pa. Super. Ct. 1996) (citing *D'Amelio v. Blue Cross of Lehigh Valley,* 606 A.2d 1215, 1217 (Pa. Super. Ct. 1992)).  Because the Amended Complaint does not allege any injury or adverse effect to Plaintiffs Ricky and Wendy Norco, they lack standing to assert a statutory bad faith claim in their own right.  Accordingly, the Court recommends that the statutory bad faith claim in Count IV be dismissed with prejudice as to Plaintiffs Ricky and Wendy Norco in their own right.

### 4.    UTPCPL Claims

Next, Defendants seek dismissal of Plaintiffs' claims in Counts V and IX of the Complaint for violations of the Pennsylvania Uniform Trade Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq.*  The purpose of the UTPCPL is to protect consumers from "fraud

---

[5] Plaintiffs submit that Ricky Norco would also be considered an "insured" under the Allstate Policy based on his marital relationship with the named insured, Wendy Norco.  75 Pa. Cons. Stat. Ann. §1702.

and unfair or deceptive business practices." *Commw. ex rel. Corbett v. Peoples Benefit Servs., Inc.,* 923 A.2d 1230, 1236 (Pa.Commw. Ct. 2007) (citing *Commw. ex rel. Creamer v. Monumental Prop., Inc.,* 329 A.2d 812 (Pa. 1974)); *Gardner v. State Farm Fire & Cas. Co.,* 544 F.3d 553, 564 (3d Cir. 2008) (citing *Pirozzi v. Penske Olds-Cadillac-GMC, Inc.,* 605 A.2d 373, 375 (Pa. Super. Ct. 1992)). Moreover, the Pennsylvania Supreme Court has emphasized that the underlying foundation of the UTPCPL is fraud prevention and, as such, it is to be liberally construed to effectuate that purpose. *Creamer,* 329 A.2d at 816-17. The Pennsylvania Legislature included in the UTPCPL a private right of action for "[a]ny person who purchases . . . goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [73 P.S. § 201-3] . . .." 73 P.S. § 201-9.2(a). Pursuant to the UTPCPL, "unlawful acts or practices" are defined as "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of [73 P.S. § 201-2(4)] . . .." 73 P.S. § 201-3.

In claims involving insurance policies, the court of appeals has explained that "'[i]n Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable.'" *Gardner,* 544 F.3d at 564 (quoting *Horowitz,* 57 F.3d at 307 (citing *Gordon v. Pa. Blue Shield,* 548 A.2d 600, 604 (Pa. Super. Ct. 1988)).

In support of their motion to dismiss, Defendants argue that because Talon did not purchase the Allstate Policy, his UPTCPL claim, brought on his behalf by the Guardian-

Plaintiffs, must fail. Plaintiffs do not address this argument directly, but merely respond that Ricky and Wendy Norco were appointed guardians *ad litem* for Talon, and Wendy Norco (identified as Wendy Walsh on the declarations page) is the "named insured" on the Policy.

The Court agrees with Defendants. The law in Pennsylvania is clear that a private right of action under the UTPCPL is extended only to persons who (1) purchase goods and services for personal or family use, and (2) suffer an ascertainable loss as a result of certain practices determined to be unlawful under 73 P.S. §201-3. *See* 73 P.S. §201-9.2(a). Here it is clear that Talon was not the purchaser of the Allstate Policy. Although the Guardian Plaintiffs can bring claims on Talon's behalf, they can only bring claims which he would be entitled to bring if he were able to bring them in his own right. Guardian Plaintiffs cannot assert claims on Talon's behalf that only they are entitled to bring on behalf of themselves. Thus, Talon's UTPCPL claims against Defendants fail as a matter of law.

As to Plaintiffs Ricky and Wendy Norco, Defendants argue that they lack legal standing to bring a UTPCPL claim, and cite in support *Anderson,* 187 F. Supp. 2d at 454-455. Because it is undisputed that Ricky and Wendy Norco were not injured as the result of the vehicular accident, did not present any insurance claim to Allstate on their own behalf, and suffered no injury as a result of Allstate's handling of Talon's third party liability claim, Defendants maintain they lack standing to assert a UTPCPL claim against them. In response, Plaintiffs submit that Defendants' argument lacks merit, as under both common law and Section 8371, the bad faith breach of the contract between Allstate and the Norcos is sufficient to trigger a claim for damages, citing *Birth Center, supra.*

The Court finds that Ricky and Wendy Norco do not meet the statutory requirements for bringing a private right of action under the UTPCPL. Under Section § 201-9.2(a), Plaintiffs

must show, inter alia, that they suffered an ascertainable loss of money or property as a consequence of Defendants' alleged "[u]nfair methods of competition and unfair or deceptive acts or practices" in the handling of Talon's third-party liability claim or in the handling of an insurance claim made by them. This they cannot do. As this Court found above, it is undisputed that Ricky and Wendy Norco were not injured as the result of the vehicular accident, did not present any insurance claim to Allstate on their own behalf, and suffered no injury as a result of Allstate's handling of Talon's third party liability claim. Moreover, Plaintiffs' reliance on *Birth Center* is misplaced. That case simply does not stand for the proposition for which it is cited, and thus, does not support Plaintiffs' argument. *See* footnote 4, *supra.*

Accordingly, having failed to plead that they sustained injuries in their own right from Defendants' allegedly unfair or deceptive acts or practices in the handling of Talon's third party liability claim, Plaintiffs cannot state a viable UTPCPL claim in their own right. Therefore, the Court recommends that Ricky and Wendy Norco's UTPCPL claims against Defendants be dismissed with prejudice.

### 5. Wrongful Use of Civil Proceedings Claim

Defendants also seek dismissal of Count VI of the Amended Complaint which alleges a claim for wrongful use of civil proceedings under the Dragonetti Act, 42 PA. CONS. STAT. §8351(a). The elements of a Dragonetti Act claim are set forth in Section 8351(a):

> **(a) Elements of action.**--A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
>> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

> (2) The proceedings have terminated in favor of the
> person against whom they are brought.

42 PA. CONS. STAT. §8351(a). Thus, in order to state a claim for wrongful use of civil proceedings, a plaintiff must show, inter alia, that the defendant "instituted proceedings against the plaintiff." *Hart v. O'Malley*, 781 A.2d 1211, 1219 (Pa. Super. Ct. 2001). A "proceeding" is defined by statute as: "every declaration, petition or other application which may be made to a court under law or usage or under special statutory authority, but the term does not include an action or an appeal." 42 PA. CONS. STAT. ANN. §102.

The essence of Plaintiffs' Dragonetti Act claim is that Allstate presented a Settlement Petition in state court seeking to compromise and settle Talon's claims for an amount substantially less than the Policy limits[6] (Am. Compl., ¶¶ 49, 52-54), that the Settlement Petition was unsuccessful (*id.* at ¶¶57-59), and no appeal was taken from the court's order dated August 30, 2011 denying the Settlement Petition (*id.* at ¶59). Plaintiffs further contend that the initiation of the action in Orphans Court was made in a grossly negligent manner and in bad faith (*id.* at ¶61), and that Allstate could not have reasonably believed that the proposed settlement was fair and adequate in light of Talon's injuries (*id.* at ¶62). Based on these allegations, Plaintiffs submit that Allstate knew it did not have probable cause to initiate the Orphans Court proceeding and make the request for relief set forth in their Settlement Petition.

Allstate seeks dismissal of Plaintiffs' Dragonetti Act claim arguing in support that the Settlement Petition filed in Orphans Court does not constitute a "proceeding" for purposes of the Dragonetti Act. Specifically, Allstate submits that a claim for wrongful use of civil proceedings

---

[6] The Petition to Approve Settlement of a Minor's Claim was presented by Allstate at No. 64 of 2011 in the Lawrence County Court of Common Pleas, Orphans Court Division, in Motions Court on August 9, 2011. (Defs.' Ex. F attached to Defs.' Br., ECF No. 6-6.)

does not, as a matter of law, refer to the filing of a petition required by the rules of civil procedure to obtain court approval of a settlement with a minor. In support, Allstate cites *Rosen v. American Bank of Rolla,* 627 A.2d 190, 193 (Pa. Super. Ct. 1993), and *Hart v. O'Malley,* 676 A.2d 222, 225 (Pa. 1996). However, neither of these cases is dispositive. In *Rosen,* the court was faced with the question of whether the issuance of a subpoena constituted the "initiation or continuation" of a proceeding against the plaintiff. The *Rosen* court concluded that the issuance of a subpoena to plaintiff in an action against a former client did not constitute the procurement, institution or continuation of a civil proceeding against him. 627 A.2d at 193 (citations omitted). Unlike the filing in *Rosen,* here Allstate presented a petition to enforce the proposed settlement agreement to the Orphans Court pursuant to Pennsylvania Rule of Civil Procedure 2039.[7] A petition is specifically identified as a type of civil "proceeding" under 42 PA. CONS. STAT. ANN. §102. It is of no moment that Allstate was required to follow Rule 2039 if it wished to settle the Minor-Plaintiff's claim.

*Hart* is also inapposite. In that case, the Pennsylvania Supreme Court was faced with an issue not before this Court—whether non-parties to the underlying action, who were later determined to be indispensable, had standing to sue under §8351 where the injunctive relief sought in the underlying action affected the non-parties so directly and substantially that it should be treated as an action against them for purposes of §8351. *Hart,* 676 A.2d at 225. In deciding this issue, the supreme court allowed an exception to the rule in *Rosen,* 627 A.2d at 193—that one who was not a party to the underlying action lacks standing to sue under §8351— in situations where an injunction is sought and obtained. *Hart,* 676 A.2d at 225.

---

[7] Pennsylvania Rule of Civil Procedure 2039 provides in relevant part: "No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." PA. R. CIV. P. 2039(a).

Accordingly, the Court recommends that Defendants' motion to dismiss Talon's and Guardian-Plaintiffs' claim for wrongful use of civil proceedings in Count VI be denied.

However, the Court recommends that the motion to dismiss Count VI be granted as to Plaintiffs Ricky and Wendy Norco in their own right. Ricky and Wendy Norco were not parties to the petition to enforce the settlement agreement filed in Orphans Court on August 9, 2011, in their own right. Their participation in that proceeding was in their capacities as guardians *ad litem,* for the minor, Talon Norco. Thus, based on *Hart* (Pa. 1996) and *Rosen,* Plaintiffs Ricky and Wendy Norco lack standing to bring a §8351 claim against Allstate in their own right.

### 6.    Fraud Claims

Finally, Defendants seek dismissal of Plaintiffs' fraud claims in Counts VII & VIII of the Amended Complaint. In Pennsylvania, the elements of a cause of action for fraud or deceit are: (1) "a misrepresentation," (2) "a fraudulent utterance thereof," (3) "an intention to induce action thereby," (4) "justifiable reliance thereon and" (5) "damage as a proximate result." *Wilson v. Donegal Mut. Ins. Co.,* 598 A.2d 1310, 1315 (Pa. Super. Ct. 1991) (citing *Neuman v. Corn Exch. Nat'l Bank & Trust Co.,* 51 A.2d 759, *supplemented* 52 A.2d 177 (Pa. 1947)) (other citation omitted).

In support of their motion to dismiss Plaintiffs' fraud claims, Defendants argue that the Amended Complaint does not and cannot assert, with the requisite specificity, all of the elements required to properly plead and prove a claim for common law fraud. Specifically, Defendants submit that it is clear from the allegations in the Amended Complaint that Plaintiffs did not justifiably rely to their detriment on any alleged statements made by Allstate or Cunningham. To the contrary, Defendants maintain that Plaintiffs retained an attorney, filed a lawsuit within the applicable statute of limitations, and settled Talon's third party liability claim which was

approved by the state court. Thus, according to Defendants, Plaintiffs cannot allege any facts to show that they satisfied the fourth and fifth elements of a common law fraud/deceit claim— justifiable reliance on the misrepresentations and damage proximately caused by the reliance. In response, Plaintiffs submit that they have alleged sufficient facts which, if true, establish the legal elements of a claim for common law fraud (deceit).

After reviewing the allegations in the Amended Complaint, the Court finds that Plaintiffs have failed to set forth sufficient factual allegations as to the fourth and fifth elements of a common law fraud/deceit claim. In the Amended Complaint, Plaintiffs identify the allegedly deceptive conduct and false representations of Allstate and its agent, Stephanie Cunningham, that form the basis of their common law fraud/deceit claims. These allegations include Defendants' representations that because Plaintiffs had elected the limited tort option, (1) there was no legal action they could take on behalf of Talon and (2) Allstate (as insurer of Jessica Norco) was not obligated to pay anything; that Plaintiffs would be wasting time and money consulting with an attorney; that the settlement proposed by Allstate was the best possible settlement Plaintiffs could reach, was pending in court for over a year, and represented the best interest of Talon. (Am. Compl. ¶¶ 65(a) – (g), 71(a) – (g).) Even assuming these allegations are true, Plaintiffs have failed to show that they relied on these allegedly false representations to their detriment. The Amended Complaint and state court documents show that Plaintiffs did not rely on Defendants' representations to their detriment. Although the Amended Complaint alleges that Defendants "intended to induce Plaintiffs' reliance upon [the false and misleading] statements, to the[ir] detriment . . ." (Am. Compl. ¶¶ 68, 74), nowhere in the Amended Complaint do Plaintiffs allege that they actually relied on those statements or that they suffered damages as a result of such reliance. Moreover, the state court documents show that ultimately, Plaintiffs did not rely

on the misleading statements, as they retained counsel and rejected the proposed settlement of the third party liability claim, and indeed did take legal action against Defendants by filing the instant lawsuit within the statute of limitations.

In light of these undisputed facts, the Court finds that Plaintiffs have failed to allege any facts to show a plausible claim for common law fraud (deceit) under Pennsylvania law. Accordingly, the Court recommends that Plaintiffs' common law fraud claims in Counts VII and VIII of the Amended Complaint be dismissed with prejudice.[8]

---

[8] In their brief in opposition to the motion to dismiss, Plaintiffs argue that their Amended Complaint also sets forth a valid claim for the tort of outrage. (Pls.' Br. in Opp'n at 20-23, ECF No. 10.) This argument is not, however, in response to any position advanced by Defendants in their motion to dismiss or supporting brief. Moreover, Plaintiffs' argument lacks merit, as their Amended Complaint does not set forth a separate claim for the tort of outrage, and it is not appropriate to assert such a claim in a brief in response to a motion to dismiss, especially where Defendants have not raised any issue with regard to such claim.

### D.    <u>Conclusion</u>

For the reasons set forth above, it is respectfully recommended that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 5) pursuant to Rule 12(b)(6) be granted in part and denied in part.   It is recommended that Defendants' motion be **GRANTED** as follows:

**Coverage Claim in Count II** – Recommend summary judgment be granted.

**Common Law Bad Faith Claim in Count III** – Recommend granting motion to dismiss without prejudice.  If Plaintiffs choose not to seek leave of court to amend their complaint to add allegations of harm as detailed in the above Report, then the Court recommends dismissal of this claim with prejudice.

**Statutory Bad Faith Claim in Count IV** – Recommend granting motion to dismiss with prejudice.

**UTPCPL Claims in Counts V and IX** – Recommend granting motion to dismiss with prejudice.

**Wrongful Use of Civil Proceedings Claim in Count VI** – Recommend granting  motion to dismiss with prejudice as to Ricky Norco and Wendy Norco in their own right.

**Fraud Claims in Counts VII and VIII** – Recommend granting motion to dismiss with prejudice.

It is further recommended that Defendants' motion to dismiss be **DENIED** as follows:

**Wrongful Use of Civil Proceedings Claim in Count VI** – Recommend denying motion to dismiss as to Talon and/or

Guardian Plaintiffs on behalf of Talon.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

July 17, 2012                                    BY THE COURT:

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc:     All Counsel of Record
        *Via Electronic Mail*