IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TALON NORCO, a minor, by RICKY NORCO and WENDY NORCO, Guardians *Ad Litem,* and RICKY NORCO and WENDY NORCO, in their own right, | Civil Action No. 2:11-cv-1453 |
| Plaintiffs, | Chief Judge Gary L. Lancaster |
| | Chief Magistrate Judge Lisa Pupo Lenihan |
| v. | |
| | ECF No. 27 |
| ALLSTATE INSURANCE CO. and STEPHANIE CUNNINGHAM, | |
| Defendants. | |

## **MEMORANDUM ORDER**

Currently pending before the Court for disposition is Plaintiff's Petition for Leave to Amend the Complaint (ECF No. 27). Pursuant to Judge Lancaster's Memorandum Order dated 9/10/12 (ECF No. 25), Plaintiffs seek leave to amend their Complaint to add allegations of harm with regard to their claim of common law bad faith. In addition, Plaintiffs also seek to add two claims for the tort of outrage (Counts III and IV). Defendants oppose Plaintiffs' motion arguing that Plaintiffs have failed to state plausible claims for common law bad faith and outrage, and therefore, it would be futile to allow Plaintiffs leave to amend their complaint.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." In *Foman v. Davis,* the Supreme Court delineated the grounds that would justify denying leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [and] futility of amendment". *Foman v. Davis,* 371 U.S. 178, 182 (1962). The grant or denial of leave to amend is within the sound discretion of the district court; however, failure to provide a reason for denying leave to amend is considered an abuse of that discretion. *Id.*; *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Foman, supra*). In determining whether the proposed amendment would be futile, courts apply the same standard as that applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir. 2000) (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57). The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of

2

action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## Proposed Count I - Common Law Bad Faith

In the Report and Recommendation (ECF No. 15), adopted as the opinion of the District Court (ECF No. 25), the undersigned concluded that a claim for common law bad faith in Pennsylvania is recognized in limited circumstances, i.e., where the insureds have suffered harm as a consequence of the insurer taking on the rule of a fiduciary and knowingly and purposefully misrepresenting the coverage available under the policy. *Miller v. Keystone Ins. Co.*, 636 A.2d 1109, 1112-13 (Pa. 1994) (citing *Dercoli v. Nat'l Mut. Cas. Ins. Co.*, 554 A.2d 906, 911 (P8. 1989)). A determining factor in the supreme court's recognition of a common law bad faith claim in *Dercoli* was the fact that the insured had been lulled into inaction with regard to a viable claim and, because the statute of limitations had expired, was precluded from bringing a viable claim. Based on this precedent, this Court concluded that Plaintiffs should be allowed the opportunity to re--plead their common law bad faith claim to allege any cognizable harm they sustained as a consequence of Defendants' actions prior to the retention of counsel.

Now, in their proposed second amended complaint, Plaintiffs allege that they have suffered the following harm as a result of Defendants' conduct:

> **As to Tallon**--loss of use of settlement monies from a delay in payment (i.e., lost interest); and reduction in the amount of settlement monies received due to the need to retain counsel (i.e., attorneys' fees).
>
> **As to Wendy and Ricky Norco**--loss of earnings from time spent

3

conferring with Allstate's representative and attending state court proceedings.

Proposed Second Am. Compl., ¶37(a)(1)-(2) & (b)(1). In addition, Talon, Wendy and Ricky Norco claim punitive damages due to Defendants' allegedly outrageous conduct. *Id.* at ¶37(a)(3) & (b)(2).

Defendants raise several arguments opposing Plaintiffs' request for leave to amend their complaint.[1] First, Defendants submit that the proposed second amended complaint fails to allege any legally cognizable harm allegedly resulting from Defendants' alleged conduct prior to Plaintiffs' retention of counsel which could be recoverable under a "common law bad faith" claim. Thus, Defendants submit that the common law bad faith claim contained in the proposed second amended complaint should be dismissed with prejudice. The Court agrees with Defendants that under Pennsylvania law, attorneys fees and punitive damages are not recoverable on a common law claim for breach of the duty of good faith and fair dealing. Plaintiffs have not responded to Defendants' argument.[2]

A bad faith claim based on breach of the duty of good faith and fair dealing is, in essence, a claim for breach of contract. *Cummings v. Allstate Ins. Co.*, 832 F.Supp. 2d 469, 473 (E.D. Pa. 2011) ("'there is no independent cause of action for a breach of the covenant of good faith and fair dealing – arising in contract – in Pennsylvania because such breach is merely a breach of contract.'") (quoting *Zaloga v. Provident Life & Acc. Ins. Co. of Am.,* 671 F.Supp. 2d 623, 631

---

[1] Preliminarily, Defendants argue that Plaintiffs should not be permitted to include the claim of wrongful use of civil proceedings (Count II) in the proposed second amended complaint for the reasons set forth in Defendants' earlier motion to dismiss this claim and incorporate their prior arguments that this claim as pled is frivolous and legally unfounded. The Court finds no merit to this argument for the same reasons set forth in the Report and Recommendation (ECF No. 15) at 21 – 24.

[2] Although Plaintiffs did file a reply to Defendants' response to their petition for leave to amend entitled, "Brief in Support of Plaintiffs' Petition for Leave to Amend" (ECF No. 29), Plaintiffs

(M.D.Pa. 2009) (citing *The Birth Center v. St. Paul Cos., Inc.*, 787 A.2d 376, 86 (Pa. 2001))). *See also LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 391 (Pa. Super. Ct. 2008) ("'A breach of [the implied] covenant [of good faith and fair dealing] is a breach of contract action, not an independent action for breach of a duty of good faith and fair dealing.'") (quoting *JHE, Inc. v. SEPTA*, 2002 WL 1018941, at *6 (Pa. Com. Pl. May 17, 2002)). Thus, a plaintiff asserting a contractual, common law bad faith claim in Pennsylvania is permitted to recover all damages otherwise available in contract actions, including compensatory damages.[3] *Kakule v. Progressive Cas. Ins. Co.*, No. Civ. A. 06–4995, 2007 WL 1810667, at *3 (E.D. Pa. June 20, 2007) (citing *Birth Center*, 787 A.2d at 385) ("where an insurer acts in bad faith, the insured is entitled to recover such damages sufficient to return it to the position it would have been in but for the breach.")

With regard to attorneys' fees, Pennsylvania follows the American Rule, which provides that attorneys' fees are not recoverable from an adverse party in the absence of "an express statutory authorization, a clear agreement by the parties or some other established exception."[4]

---

only addressed Defendants' argument regarding the tort of outrage.

[3] As the Pennsylvania Supreme Court explained in *Birth Center*:
> Compensatory damages are damages meant to place the injured party in the place he was prior to the injury. BLACK'S LAW DICTIONARY 390 (6th ed. 1990). Compensatory damages consist of both "general" and "consequential" or "special" damages. While general damages compensate the injured party for the immediate injury or loss sustained, consequential damages are damages that flow from the consequences of the direct injury. *Id*. To recover consequential damages, a litigant must prove that they were "reasonably foreseeable" to the parties at the time they entered into the contract. *AM/PM Franchise Assoc. v. Atlantic Richfield*, 526 Pa. 110, 584 A.2d 915, 920-21 (1990).

787 A.2d at 390 n. 1 (Nigro, J., dissenting).

[4] None of the exceptions applies here. As this is a common law bad faith claim, no express statutory authorization of attorneys' fees governs this claim. In addition, as explained below, there is no insurance contract between Talon and Allstate, which could give rise to a contractual provision of attorneys' fees. Nor is the Court aware of any other established exception that would apply here.

*Merlino v. Delaware Cnty.,* 728 A.2d 949, 951 (Pa. 1999) (citations omitted); *McMullen v. Kutz*, 603 Pa. 602, 985 A.2d 769, 775 (Pa. 2009). Moreover, ordinarily attorneys' fees are not recoverable for a mere breach of contract claim. *Sypeck v. State Farm Mut. Auto. Ins. Co.,* Civ. A. No. 3:12-CV-324, 2012 WL 2239730, at *4 (M.D.Pa. June 15, 2012) (citing *McMullen,* 985 A.2d at 775).

In the case at bar, the alleged harm to Talon in paragraph 37(a)(2), arising from the reduction in the amount of the settlement he received due to the need to retain counsel, is just another way of attempting to recover his attorneys' fees. This Court has previously rejected a similar attempt to recover attorneys' fees in *Lewis v. Delp Family Powder Coatings, Inc.*, where the plaintiff attempted to recast his attorneys' fees as consequential damages of the breach of contract. *Lewis v. Delp Family Powder Coatings, Inc.*, Civ. A. No. 08-1365, 2011 WL 1230207, at *6 (W.D.Pa. Mar. 31, 2011). In *Lewis,* this Court observed that "Pennsylvania appellate courts have held that attorneys' fees are not recoverable as consequential damages." *Id.* (citing *Haverstick v. Erie Gas Co.*, 29 Pa. 254, 1857 WL 7455, *3 (Pa. 1857) (holding in an action for breach of contract plaintiff could not recover as damages the cost of his attorney's fees to bring the lawsuit); *Caldwell v. Keystone Ins. Co.*, 243 A.2d 448, 449–50 (Pa. Super. Ct.1968) (superior court affirmed the trial court's denial of the insured's damage claim, holding that the insured could not recover his costs, including attorneys' fees, associated with the obtaining of a judgment against the tortfeasor responsible for the insured's loss). Because there is no statutory or contractual basis here for the recovery of attorneys' fees on Plaintiffs' common law bad faith claim, and attorneys' fees are not recoverable as consequential damages in common law contract actions in Pennsylvania, the Court finds that the alleged harm set forth in paragraph 37(a)(2) of the proposed second amended complaint is not recoverable.

Nor are punitive damages available for merely a breach of contract. *Baker v. Pa. Nat'l Mut. Cas. Ins. Co.,* 536 A.2d 1357, 1361 (Pa. Super. Ct. 1987) (citations omitted); *see also DiGregorio v. Keystone Health Plan East*, 840 A.2d 361, 370 (Pa. Super. Ct. 2003) (plaintiff cannot recover punitive damages for an action solely sounding in breach of contract) (citing *Thorsen v. Iron & Glass Bank,* 476 A.2d 928 (Pa. Super. Ct. 1984)); *Std. Pipeline Coating Co., Inc. v. Solomon & Teslovich, Inc*., 496 A.2d 840, 844 (Pa. Super. Ct. 1985) ("punitive damages will not be assessed for a mere breach of contractual duties") (citation omitted). Thus, the alleged punitive damages set forth in paragraphs 37(a)(3) and (b)(2) of the proposed second amended complaint are not recoverable on Plaintiffs' common law bad faith claim.

As to the claimed lost interest on the delayed settlement, such damages are recoverable in a breach of contract action where the lost interest results from a delay in payment owed under a contract. In *TruServ Corp. v. Morgan's Tool & Supply Co., Inc.,* the Pennsylvania Supreme Court held that "where the parties to a contract have not specifically addressed the payment of interest in the terms of the contract, the nonbreaching party may recover, as damages, interest on the amount due under the contract." 39 A.3d 253, 261 (Pa. 2012) (citing 25 WILLISTON ON CONTRACTS § 66:109 (4th ed.) (citing RESTATEMENT (SECOND) OF CONTRACTS §354)). Interest awarded as damages in such circumstances has been referred to as prejudgment interest. *Id.* (citing *Fernandez v. Levin*, 548 A.2d 1191, 1193 (1988)). Unfortunately for Talon, as explained below, there is no insurance contract between him and Allstate which would allow him to recover prejudgment interest on the amount of his settlement.

With regard to the claimed loss of earnings by Ricky and Wendy Norco for time spent attending court proceedings and conferring with Allstate's representative, Defendants submit that these damages are not the type of compensatory damages potentially available to an insured

7

under a common law bad faith claim based upon the insurance contract at issue here. Plaintiff has failed to respond to this argument. The Court agrees with Defendants. It is not aware of any authority which would authorize an award of such damages to Ricky and Wendy Norco in their capacity as guardians *ad litem* or in their own right. The loss of earnings requested by Ricky and Wendy Norco would not restore Talon to the position he was in prior to Defendants' alleged bad faith conduct. It has not been alleged that Ricky and Wendy Norco submitted a claim to Allstate in their own right for injuries allegedly sustained in the motor vehicle accident at issue here. Moreover, even if Allstate had agreed to pay the full policy limits at some earlier time, Ricky and Wendy Norco, in their capacity as guardians *ad litem*, would still have been required to confer with Allstate's representative and to attend court proceedings. Therefore, the Court finds no basis in the law or fact for the lost earnings damages claimed by Ricky and Wendy Norco in paragraph 37(b)(1) of the proposed second amended complaint.

In further opposition to Plaintiff's' petition for leave to amend, Defendants argue that Talon, a minor, is not an insured under the Allstate policy at issue, but rather, is a third party claimant. As such, and because the common law bad faith claim is solely derived from the insurance contract, to which Talon was not a party, Defendants maintain that Talon has no contractual right to receive liability insurance coverage available to the named insured and tortfeasor, Jessica Norco. Therefore, Defendants contend that as a matter of contract law, there is no common law duty of good faith and fair dealing on behalf of Allstate relating to Talon's claim against his mother arising from her alleged negligence in driving the vehicle. Again, Plaintiffs have failed to respond to this argument.

The Court finds that because a common law bad faith claim is predicated on the insurer's duty of fair dealing and good faith under the insurance policy, Talon cannot state a plausible

8

claim for common law bad faith as he is a third party claimant, and as such, he did not have a contractual right to receive liability coverage under the policy. Plaintiffs' bad faith claim is based entirely on Defendants' handling of Talon's third-party liability claim against the tortfeasor and Allstate's insured, Jessica Norco. With regard to Talon's third party tort claim, Allstate owed a contractual duty to defend and indemnify the tortfeasor, its insured, Jessica Norco. *See* Report and Recommendation (ECF No. 15) at 16-17 (citing *Gramberg v. Nationwide Mut. Ins. Co.*, No. 3: CV–98–0258, 2000 U.S. Dist. LEXIS 20108, at*(M.D.Pa. Feb. 24, 2000). Therefore, Talon's right to claim liability benefits derives from tort law as opposed to contractual provisions under Allstate's policy. As such, Talon has failed to assert the existence of any contract or insurance policy from which it can be said that Allstate owes Talon a duty of good faith and fair dealing vis-à-vis his third-party tort claim.

Finally, with regard to Ricky and Wendy Norco's claim, in their own right, for common law bad faith, Defendants argue that they suffered no injuries or harm in the motor vehicle accident, and moreover, they lack standing to bring a common law bad faith claim, for the same reasons as those articulated by this Court in the Report and Recommendation with regard Plaintiff's' statutory bad faith claim. Plaintiffs have not responded to this argument. The Court agrees with Defendants. As explained above, the duty of good faith and fair dealing derives from the parties' contract, in this case, Allstate's policy. Although Wendy Norco is a named insured under the policy, the duty allegedly breached and upon which the bad faith claim is predicated is Defendants' duty to Jessica Norco in their handling of Talon's third-party tort claim. Neither Wendy nor Ricky Norco are alleged to be tortfeasors in Talon's third-party claim, nor does the proposed second amended complaint allege that either Wendy or Ricky (1) were passengers in a car driven by Jessica Norco at the time of the accident, (2) suffered any injury in the accident, or

(3) submitted any insurance claim on their own behalf in connection with the accident.[5] Therefore, Ricky and Wendy Norco cannot maintain a claim for common law bad faith in their own right because Allstate did not owe a duty to them with regard to Talon's third-party claim, and Ricky and Wendy Norco fail to otherwise assert a breach of the duty of good faith and fair dealing vis-à-vis any claim made by them under the Allstate policy in their own right.

Accordingly, for the reasons set forth above, the Court finds it would be futile to allow Plaintiffs to amend their common law bad faith claim as set forth in the proposed second amended complaint.

### Proposed Counts III & IV – Outrage

Plaintiffs also seek to add two new claims for the tort of outrage in their proposed second amended complaint. The tort of outrage claims set forth in Counts III and IV of the proposed second amended complaint are brought respectively by Ricky and Wendy Norco in their own right against the Defendants (Count III), and by Talon, his guardians *ad litem*, and Ricky and Wendy Norco in their own right against Defendants (Count IV). In the proposed Counts III and IV, Plaintiffs allege essentially that Defendants' conduct was extreme and outrageous and as a direct and proximate result thereof, Wendy and Ricky Norco contend they suffered severe emotional distress, which distress was directly caused by being betrayed by their own insurance company. (Proposed Second Am. Compl. ¶¶57-58.) Wendy and Ricky Norco further allege that Defendants' conduct was directed at harming the pecuniary interests of Talon, their grandchild, and that this conduct was intentionally and recklessly performed for the purpose of enhancing Allstate's financial position at the expense of the Guardian-Plaintiffs and Talon. Plaintiffs claim

---

[5] Although the proposed second amended complaint alleges that Ricky and Wendy Norco sustained lost earnings from attending court proceedings and conferring with Allstate's representative, these alleged damages were incurred in their capacity as guardians *ad litem*, not

10

to have suffered damages consisting of lost earnings for the time spent in conferring with Allstate's representative and attending court proceedings, and mental and emotional distress arising from Defendants' outrageous conduct, for which they seek compensatory damages. (Proposed 2nd Am. Compl. ¶60.) In addition, Plaintiffs seek punitive damages due to Defendants' alleged outrageous conduct. (*Id.* at ¶¶60, 62.)

Defendants oppose this proposed amendment presenting a two-fold argument in support. Initially, Defendants argue that the tort of outrage does not exist in Pennsylvania, and therefore, Plaintiffs' request to amend their complaint to add such a claim should be denied. In response, Plaintiffs counter that tort of outrage, alternatively referred to as intentional infliction of emotional distress, is a viable cause of action in Pennsylvania in claims involving insurance coverage. The Court agrees with Plaintiffs.

A number of intermediate appellate courts in Pennsylvania, as well as the U.S. Court of Appeals for the Third Circuit, have held that Pennsylvania recognizes intentional infliction of emotional distress as a valid cause of action, despite the Pennsylvania Supreme Court's decision in *Kazatsky v. King David Memorial Park*, 527 A.2d 988, 989 (Pa. 1987), which left for another day the question of the viability of such a claim in Pennsylvania. *See, e.g., Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997); *Johnson v. Caparelli,* 625 A.2d 668, 671 (Pa. Super. Ct. 1993) (discussing cases some of which adopted §46 and others which did not); *Williams v. Guzzardi*, 875 F.2d 46, 51 (3d Cir. 1989). Although the supreme court did not officially recognize the tort of intentional infliction of emotional distress in *Kazatsky*, it nonetheless analyzed plaintiff's claim under the standard set forth in Section 46 of the RESTATEMENT (SECOND) OF TORTS, in determining that the plaintiff had failed to support the alleged emotional

---

for any claims they were pursuing in their own right against Allstate.

distress with objective proof of severe emotional distress, i.e., competent medical evidence as to the nature and extent of their physical injuries. *Id.* at 995. Indeed, our sister courts in the Eastern District have noted that the Pennsylvania Supreme Court "has repeatedly applied the Restatement definition to claims for intentional infliction of emotional distress." *Weinstein v. Bullick*, 827 F. Supp. 1193, 1203 (E.D. Pa. 1993); *Corbett v. Morgenstern*, 934 F. Supp. 680, 684 note 5 (E.D. Pa. 1996) (citing *Weinstein, supra*); *Stouch v. Brothers of Order of Hermits of St. Augustine,* 836 F.Supp. 1134, 1144 (E.D. Pa. 1993) (citing *Kazatsky, supra,* and *D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.,* 431 A.2d 966, 971-72 n. 8 (Pa. 1981)).

Section 46 of the Restatement provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

RESTATEMENT (SECOND) OF TORTS, §46(1) (1965). The Pennsylvania courts have distilled the Restatement definition into four elements: "(1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." *Hoy,* 691 A.2d at 610 (citing *Hooten v. Pa. Coll. of Optometry*, 601 F.Supp. 1151, 1155 (E.D.Pa.1984); RESTATEMENT, §46). Defendants challenge the sufficiency of the allegations as to the first and fourth elements.

In determining whether the first element has been met, the courts generally look to the definition of extreme and outrageous conduct set forth in the Restatement:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

> decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

RESTATEMENT (SECOND) OF TORTS, §46, cmt. d; *see also Corbett,* 934 F.Supp. at 684 (quoting *Johnson,* 625 A.2d at 672 (citing RESTATEMENT, §46 cmt. d)). At the pleading stage, the court determines in the first instance "whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute 'outrageousness' as a matter of law." *Brownstein v. Gieda*, 649 F. Supp. 2d 368, 374 (M.D. Pa. 2009) (quoting *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000)); *Corbett*, 934 F. Supp. at 684 (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1998); RESTATEMENT (SECOND) OF TORTS, §46 cmt. h); *Johnson,* 625 A.2d at 671-72 (citations omitted).

Defendants argue that Plaintiffs have failed to allege any conduct which would be deemed to be outrageous as a matter of law. In support, Defendants cite *D'Ambrosio,* 431 A.2d at 971 n. 8, for the proposition that bad faith conduct on the part of an insurance company is insufficient to set forth the tort of outrageous conduct causing severe emotional distress. In response, Plaintiffs counter that "Defendants' conduct in attempting to deceive the Guardian-Plaintiffs and cheat the Minor-Plaintiff out the tort settlement which he was entitled to receive is about as outrageous as anyone can imagine." Br. in Supp. of Pls.' Pet. for Leave to Am. at 4, ECF No. 29 at 4. As to Defendants' reliance on *D'Ambrosio*, Plaintiffs submit that Defendants have misstated the supreme court's holding which held only that the bad faith conduct alleged on the part of the insurance company in that case hardly constituted a case of extreme and outrageous conduct.[6] Thus, Plaintiffs maintain, that *D'Ambrosio* does not preclude intentional

---

[6]In *D'Ambrosio*, the plaintiff alleged that his claim had been summarily denied, and that after

infliction of emotional distress claims based on an insurance company's bad faith in all cases, but only based on the facts of that case. In addition, Plaintiffs maintain that the conduct alleged in *D'Ambrosio* pales in comparison to the conduct alleged in the case at bar—that the Defendants engaged in outrageous conduct designed to gain profit at the expense of an 18 month old child, which included statements that were deliberately deceptive and false.

The Court finds some merit in Plaintiffs' argument. The supreme court did not clearly rule out the possibility that a plaintiff may recover on a claim of intentional infliction of emotional distress based on an insurance company's bad faith conduct. The circumstances alleged here may be sufficient to show outrageous conduct. At least at this early stage in the proceedings, the Court is inclined find that the allegations here are sufficient to satisfy the first element.

However, Plaintiffs' claims for intentional infliction of emotional distress fail for another reason. With regard to the fourth element, Defendants argue that Plaintiffs have failed to allege any physical injury as a result of the alleged "outrageous" conduct. In response, Plaintiffs concede that they are not claiming that the outrageous conduct of Defendants has caused bodily harm, but rather, that Defendants' conduct has "deprived [them] of the peace of mind which they sought when they purchased the [Allstate insurance] policy" and caused them to experience a "profound sense of betrayal." Br. in Supp. of Pls.' Pet. for Leave to Am. at 2, ECF No. 29 at 2. In the Court's view, Plaintiffs' concession is fatal to their claims of intentional infliction of emotional distress. In Pennsylvania, it is clear that in order to state a claim under which relief

---

several and repeated calls by plaintiff, the insurance company reluctantly provided the reason for denial of his claim—that the adjuster concluded the claim was improper. Thereafter, plaintiff asked for the information upon which the adjuster concluded his claim was improper which he never received. Plaintiff submitted his own documentation to justify the claim, yet the insurance company continued to refuse the claim. 431 A.2d at 967-68.

can be granted for intentional infliction of emotional distress, the plaintiff is required to allege physical injury. *Hart v. O'Malley,* 647 A.2d 542, 554 (Pa. Super. Ct. 1994) (citing *Kazatsky,* 527 A.2d at 995) (other citations omitted). Moreover, the physical injury must be supported by competent medical evidence. *Kazatsky,* 527 A.2d at 995. In the case at bar, Plaintiffs have conceded that they are not alleging any physical injury as a result of Defendants' alleged outrageous conduct. Therefore, as a matter of law, Plaintiffs have failed to establish a plausible claim for the intentional infliction of emotion distress under Pennsylvania law. Accordingly, it would be futile to allow Plaintiffs to amend their complaint to add two counts for the tort of outrage.

In consideration of the above, the Court enters the following order:

**AND NOW,** this 26th day of October, 2012, **IT IS HEREBY ORDERED** that Plaintiffs' Petition for Leave to Amend their Complaint (ECF No. 27) is **DENIED.**

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of issuance of this Order to file an appeal to the District Judge, which includes the basis for objection to this Order. Any party opposing the appeal shall have fourteen (14) days from the date of service of the notice of appeal to respond thereto. Failure to file a timely notice of appeal will constitute a waiver of any appellate rights.

BY THE COURT:

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc: All Counsel of Record
 *Via Electronic Mail*